IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ALEX BANKHEAD,<br><br>              Plaintiff,<br><br><br>       vs.<br><br><br>FIRE INSURANCE EXCHANGE,<br>              Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:08-CV-312 |

This case is before the court on Defendant Fire Insurance Exchange's (FIE)[1] motion for summary judgment.  Plaintiff Alex Bankhead filed this Declaratory Judgment Act suit seeking enforcement of an insurance policy he obtained on a house he was building that was destroyed by fire.  FIE contends that the policy was cancelled before the fire due to nonpayment.  The sole issue necessary for the court's decision is whether the undisputed material facts show that an notice of cancellation was mailed to Dr. Bankhead.  Because FIE has not presented sufficient evidence on this question, the motion for summary judgment is **DENIED**.

## BACKGROUND

Mr. Bankhead had a one-year insurance contract with FIE covering the construction of a new home (the Policy).  The Policy listed First Horizon Home Loan Corporation's Construction

_____

[1]The pleadings refer to FIE and "Farmer's" interchangeably.  The relationship between these entities is not clear from the record.  The court will refer solely to FIE for clarity.

Lending Department as the mortgagee.[2]  Consistent with Utah law, the Policy stated that it could be canceled by mailing or delivering written notice to the last known address on the policy-holder.

Dr. Bankhead's one-year insurance contract was set to expire on November 15, 2007.  He did not pay the renewal premium before that date.  FIE contends that on November 23 it mailed Dr. Bankhead an "Important Expiration Notice" that stated he would have no interruption of coverage if the premium were paid by December 6.  When no payment was received, FIE maintains that on December 12, 2007, it mailed Dr. Bankhead, First Horizon Home Loan Corporation and First Horizon Home Construction Lending Department notices of cancellation for nonpayment of premium.

FIE submitted an affidavit from Cheryl Jordan, an employee responsible for enforcing document retention schedules and retrieving policy documents.  Ms. Jordan testified that FIE uses an automated computer system that generates notices when a policy needs to be renewed or is about to lapse.  Ms. Jordan testified that such notices are automatically generated and mailed, with postage prepaid, to the insured at the address listed in the policy and to any mortgagee at the listed address.  The notices also contain a return address and any returned mail is tracked.  FIE's standard business practice is to forward notices returned to it to the agent listed on a policy.  In its ordinary course of business, FIE logs the processing of notices in a Transaction List and Invoice List.  FIE's records show that notices regarding payment of the premium and subsequent cancellation were generated and mailed to Mr. Bankhead, First Horizon Home Loan Corporation

_____

[2]There are numerous First Horizon entities.

2

and First Horizon Home Construction Lending Department.  The records show that postage for the notices was $0.334.

Mr. Bankhead's property was damaged by fire on January 12, 2008.  Mr. Bankhead and a representative of First Horizon, Dawn Goldman, testified that they did not receive a notice of cancellation.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In conducting its analysis, the court must view all of the facts in the light most favorable to the non-movant and make all reasonable inferences in favor of the non-moving party.  Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007).  An issue of material fact is genuine if a "reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

This court has jurisdiction under 28 U.S.C. § 1332 diversity jurisdiction and must apply Utah law to the substantive issues in this case.  Peck v. Horrocks Engineers, Inc., 106 F.3d 949, 952 (10th Cir. 1997).

## ANALYSIS

"Because this case involves an insurance policy, we strictly construe the terms and conditions of the policy in favor of the insured."  Diamond T. Utah, Inc. v. Canal Ins. Co., 361 P.2d 665, 667 (1961).  In Utah "[c]ancellation for nonpayment of premium is effective no sooner than ten days after delivery or first class mailing of a written notice to the policyholder."  Utah

3

Stat. Ann. § 31A-21-202 (c)(ii).  Utah case law and statute do not require that the insured <u>receive</u>

the notice of cancellation, only that it be mailed.  <u>Diamond</u>, 361 P.2d at 667; <u>Baumgart v. Utah</u>

<u>Farm Bureau Ins. Co.</u>, 851 P.2d 647, 651 (Utah App. 1993).  Whether  a notice was mailed is a

question of fact.  <u>Id.</u>

Utah common law establishes an "office mailing custom" doctrine.  There are two phases

under this doctrine: "the threshold phase in which the document in question is prepared, and the

subsequent phase in which the document in question is mailed."  <u>Litster v. Utah Valley</u>

<u>Community College</u>, 881 P.2d 933, 940 (Utah App. 1994).  The first threshold phase requires

direct evidence that the document was prepared.  <u>Id.</u>

> The second phase pertains to the office procedure by which documents placed in
> the outbox are delivered into the custody of the United States Postal Service.
> Evidence proffered to establish this phase of the office custom need not be direct,
> i.e., it need not show that collection and deposit of the particular document in
> question took place.  However, it must outline in detail the office procedure once
> documents are collected from the outbox.  Conclusory evidence regarding this
> phase of the procedure, such as testimony that a letter went out in the normal
> course of business, is not sufficient.

<u>Id.</u> at 941 n.6.  The court did not decide the issue of "whether testimony from the employee

directly responsible for effecting the second phase of the office custom is required."  <u>Id.</u>

For the first prong of this test, FIE produces sufficient evidence.  As explained by Ms.

Jordan, and supported by the record, FIE's automated records system generated cancellation

notices of the Policy for Dr. Bankhead and First Horizon Home Loans Construction Lending on

December 12, 2007 at the addresses they provided in the policy application.  (Jordan Aff.; Mem.

in Supp. Summ. J., Ex. K.)[3]  The records relied on by Ms. Jordan are kept in the ordinary course of business.

Dr. Bankhead relies on <u>McCoy v. Blue Cross & Blue Shield of Utah</u>, 980 P.2d 694, 698 (Utah App. 1999), as support for his argument that FIE has not shown the document was prepared.  In that case, which concerned whether notice of a arbitration provision was mailed to the plaintiff, the insurer submitted affidavits explaining that its

> programming department prepared a magnetic tape containing the names and addresses of over 30,000 subscribers who were to receive a copy of the arbitration provision.  The magnetic tape was then forwarded to a printing company which printed a cover letter to be mailed with the arbitration provision, inserting the subscribers' names and addresses on Blue Cross letterhead.  The letters, including the arbitration provision, were then forwarded to a mailing service which inserted the materials into envelopes and delivered the mailings to the post office.

<u>Id.</u> at 697.  The court held that,

> Although this evidence demonstrates that Blue Cross mailed over 30,000 letters to plan subscribers and establishes its general mailing procedure, the affidavits fail to specify whether Mr. McCoy's name and address were actually on the magnetic tape or whether written notice of the arbitration provision was actually prepared and sent to Mr. McCoy.

<u>Id.</u>  Unlike the defendant in <u>McCoy</u>, FIE has provided specific evidence, in the form of Exhibit K to its memorandum in support of summary judgment, that a mailing was prepared with Dr. Bankhead's and First Horizon's name and address.  The result in <u>McCoy</u>, therefore, is not controlling.

In addition to showing production of the cancellation notice, FIE must also meet the

---

[3]Exhibit K contains printouts of a transaction list relating to Dr. Bankhead's policy, inquiry screens showing when the notices were processed, an invoice list tracking Dr. Bankhead's account, and lists of cancellation notices mailed by FIE on December 12, 2008 that include Dr. Bankhead and First Horizon.

requirements of the second phase of the office mailing custom by showing how the notices were

"delivered into the custody of the United States Postal Service."  Litster, 881 P.2d at 941 n.6.

FIE claims this case is analogous to the Utah Court of Appeals' decision in Baumgart.  In that

case, the court held that summary judgment for the insurer was appropriate where the undisputed

facts showed that:

> (1) Farm Bureau's usual business procedure in preparing cancellation notices
> include preparing certificates of mailing; (2) it mailed cancellation notices in
> window envelopes such that the address printed on the notice would appear
> through the window on the envelope; (3) it followed usual business procedures in
> cancelling Baumgart's policy; (4) the name and address on Baumgart's
> cancellation notice were: "Hauns Baumgart / DBA-H.P.B. / 2469 East 7000 South
> # 200 / Salt Lake City, UT 84121", which was the correct address of the business;
> and (5) it prepared a mailing certificate in this case.

Id. at 652.  In Baumgart the "mailing certificate" was Postal Service Form 3877, "which [the

defendant] used to record addresses to which it sent certified mail."  Id. at 650.  The form

indicated "that the United States Postal Service received from Farm Bureau a notice of

cancellation form mailed to Baumgart, d/b/a H.P.B., in Salt Lake City, Utah."  In this case FIE

has produced an automated list of cancellation notices that were mailed on December 12, 2008.

That list includes entries for Dr. Bankhead and First Horizon and records the postage paid for the

mailing of each notice.

Dr. Bankhead argues that FIE has failed to prove it mailed the required cancellation

notices.  He relies on Baumgart for the proposition that something more than an insurer's internal

records must be produced and some sort of external evidence is required.  A requirement for

third-party verification of mailing, such as Postal Service confirmation, is not supported by the

case law.  Rather, Litster makes clear that "an inference of mailing arises when the evidence

6

proffered (1) establishes an office mailing custom, and (2) gives rise to the inference that the particular mailing in question occurred pursuant to the established custom."  881 P.2d at 940.  No external evidence is required.

But <u>Litster</u> also dictates that the moving party must "outline in detail the office procedure once documents are collected from the outbox."[4]  <u>Litster</u>, 881 P.2d at 941 n.6.  Ms. Jordan testified that the automated system employed by FIE shows that the cancellation notices were mailed.  (<u>See</u> Mem. in Supp. Summ. J., Ex. K.)  She testified that certain events recorded in the system would have triggered the automatic mailing of the notices.  (Jordan Dep. 45:6-11.)  But she also specifically testified that she has no knowledge of how the mail is transferred to the United States Postal Service after it is generated.  Absent this information, FIE has not met its burden to explain the procedures for physically transferring outgoing mail to the Postal Service.  <u>See</u> <u>Litster</u>, 881 P.2d at 941 n.6.  Accordingly, a reasonable trier of fact could find that the notices had not been mailed and summary judgment must be denied.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

---

[4]The court acknowledges that there appears to be some tension between the decision in <u>Litster</u> and <u>Baumgart</u>.  In <u>Baumgart</u>, there is no indication that the defendant provided testimony about physically transferring the notice to the Postal Service.  But <u>Litster</u> is the later ruling and addresses this issue directly.

## ORDER

For the foregoing reasons, the Defendant's motion for summary judgment (Docket No. 11)

is **DENIED**.


DATED this 30th day of October, 2009.

BY THE COURT:

TENA CAMPBELL
Chief Judge